IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:23CR231-1 |
| | : | |
| MARIAN HUDAK | : | |

### GOVERNMENT'S SUPPLEMENTAL BRIEF IN SUPPORT OF THE ADMISSION OF RACIALLY-CHARGED PARAPHERNALIA

The United States of America, by and through Sandra J. Hairston, United States Attorney for the Middle District of North Carolina, hereby files this supplemental brief in support of the admission of certain racially-charged paraphernalia, as both intrinsic to the crimes charged, as well as evidence of motive and intent under Federal Rule of Evidence 404(b). For the reasons set forth below, the United States respectfully requests that the Court reconsider its preliminary ruling excluding admission of the two Nazi flags and swastika patch recovered from the defendant's bedroom, as well as the Iron Cross ring seized from his person upon arrest.

I. PROCEDURAL HISTORY

The proffered facts and procedural history of this case are set forth at length in the United States' Notice Pursuant to Rule 404(b), *see* Dkt. Entry 33, as well as its Consolidated Trial Brief, *see* Dkt. Entry 44. The United States

incorporates those documents, including the legal arguments advanced therein, by reference.

On January 4, 2024, this Court heard argument on a myriad of pre-trial motions and issues, one being the admission of racially-charged paraphernalia seized either from Hudak's bedroom or his person. *See* Dkt. Entry dated 01/04/2024. The Court ruled that certain items – the Ku Klux Klan flag, the Confederate flags, and the racist pamphlet – met the strictures of Federal Rules of Evidence 403 and 404(b). The Court made a preliminary ruling that the Nazi-related paraphernalia (the two Nazi flags, the swastika patch, and the Iron Cross ring) creates potential unfair prejudice that substantially outweighs its probative value insofar that the jury may surmise that Hudak is anti-Semitic, invites undue speculation as to other potential biases Hudak harbors, and invites inferences of bad character.[1]

For the reasons set forth below, the case law demonstrates that any prejudice associated with admission of these items is not unfair such that it triggers the Rule 403 balancing test. Accordingly, the evidence should be admitted.

---

[1] This recitation is based upon the contemporaneous notes of the undersigned and a review of a rough transcript of the matter. To the extent this recitation of the Court's reasoning is inaccurate, the official transcript of the proceedings would obviously control.

2

II. ANALYSIS

Respectfully, while it is undisputed that the Nazi regime murdered six million Jewish people, neither the Nazis' race-based animus (nor its executions) were limited to that group of individuals.[2] Specifically, the Nazi regime's efforts to "cleanse" other non-Aryan ethnicities from Europe resulted in the murder of approximately 1.8 million ethnic Poles, between 250,000 and 500,000 Romani men, women, and children, and an unknown number of Black people living in Germany.[3] To that end, the United States Holocaust Memorial Museum specifically notes that "[w]hen the Nazis came to power in 1933, there were several thousand Black people living in Germany. The Nazi regime harassed and persecuted them because the Nazis viewed Black people as racially inferior." *See* United States Holocaust Memorial Museum, "The Nazi Persecution of Black People in Germany," available at:

---

[2] *See* United States Holocaust Memorial Museum, "Holocaust Encyclopedia, Key Facts," available at: http://encyclopedia.ushmm.org/content/en/article/documenting-numbers-of-victims-of-the-holocaust-and-nazi-persecution (last accessed Jan. 4, 2024) ("The Nazis also targeted other groups [than Jewish people] for persecution and mass murder. These groups included Soviet POWs, ethnic Poles, Roma, and people with disabilities, among others.").

[3] *See supra* n.1; *see also* Rose Eveleth, Smithsonian Magazine, "76 Years Ago Today, Jesse Owens Proved the Nazis Wrong," (Aug. 3, 2012), available at: http://smithsonianmag.com/smart-news/76-years-ago-today-jesse-owens-proved-the-nazis-wrong-12610148/ ("Hitler had hoped to use the games to prove that Aryans were superior to all other races. And, in a lot of events, the Germans took gold. But then came Jesse Owens. Owens stepped onto the track as one of ten black athletes on the United States track team.").

3

http://encyclopedia.ushmm.org/content/en/article/afro-germans-during-the-holocaust (last accessed Jan. 4, 2024).

Because Nazis targeted a variety of non-Aryan people, the symbology of the Nazi regime has been recognized – by federal courts adjudicating these matters – as representative of racial bias against ethnicities that are not Aryan. This is both because the Nazi regime espoused theories of Aryan racial superiority and because racist groups and movements have adopted these symbols as such in the years since the demise of the Third Reich. *See, e.g.*, *United States v. Foster*, 2022 WL 18587677, at *1 (D. Alaska Nov. 17, 2022) (unpublished) ("A lasting symbol of the Nazi regime has been the swastika. As the Ninth Circuit has noted, '[r]egardless of its ancient or historic origins, the swastika today is a potent symbol of intolerance, hatred, and violence.' *Dickinson v. Austin*, 942 F.2d 791 (9th Cir. 1991); *see also* https://www.adl.org/resources/hate-symbol/swastika ('Since 1945, the swastika has served as the most significant and notorious of hate symbols, anti-Semitism, and white supremacy … In the United States, the swastika is overwhelmingly viewed as a hate symbol.'),"[4] *report and recommendation*

---

[4] The citation for this link, not referenced fully in the Court's opinion in *Foster*, is: Anti-Defamation League, "Hate Symbol: Swastika," available at: https://www.adl.org/resources/hate-symbol/swastika (last accessed Jan. 4, 2024).

4

*adopted in relevant part by* 2023 WL 155442 (D. Alaska Jan. 11. 2023). Indeed, the swastika is recognized today as a "universal symbol of hatred." *United States v. Magleby*, 241 F. 3d 1306, 1313 (10th Cir. 2001).

Thus, Hudak's possession of *multiple* items of Nazi paraphernalia, including one that he wore out in public on his person for the world to see, is highly probative of his race-based animus towards people of color (specifically, Black and Hispanic individuals) and thus, his motive and intent in targeting J.S. and J.D. in separate incidents. Moreover, as Rule 404(b) is one of inclusion, Hudak must satisfy the balancing test set forth in *United States v. Queen*, 123 F.3d 991, 997 (4th Cir. 1997), and also demonstrate that such prejudice is *unfair* (triggering the Rule 403 balancing test) and also *substantially* outweighs the probative value of the items. This he cannot do.

Indeed, other courts weighing this very type of evidence – possession or adoption of Nazi symbology by a perpetrator who targets a non-Jewish victim of color – have determined that such evidence is probative and admissible. Specifically, the Ninth Circuit in *McInnis*, cited in the United States' Rule 404(b) notice, found that the defendant's possession of swastika items was "clearly relevant to establishing his racial hatred and that he acted on that hatred, an element of the crime charged." 976 F.2d 1226, 1232 (9th Cir. 1992). McInnis's victim was not Jewish; he was Black.

5

Likewise, in *United States v. Three Juveniles*, the district court noted the following evidence as probative of the defendants' guilt in a hate crimes prosecution: "SP told a friend, CR, that he wanted to form a group to run Jews and Blacks out of Brockton by scaring them with such tactics as 'bashing' Blacks and 'tagging' or spray painting Nazi and *white supremacist symbols like swastikas,* Celtic crosses and *iron crosses*." *See* 886 F. Supp. 934, 936 (D. Mass. 1995) (emphasis added). Thus, the Court recognized swastikas and iron crosses – the very symbols at issue here – are white supremacist symbols, in a case where some of the victims were Jewish and some were Black.

In *United State v. Metcalf*, the defendant was charged with attacking a Black man based on race. The jury heard evidence that, in addition to calling the victim a "nigger" multiple times at a bar before attacking him, the defendant had a swastika tattoo, and indeed, that he showed this tattoo to a friend at the bar, stating, "That's what I'm about." *See* 881 F.3d 641, 643 (8th Cir. 2018). Metcalf's victim was Black. In affirming the district court's denial of Metcalf's Federal Rule of Criminal Procedure 29 motion for acquittal, the Eighth Circuit cited to Metcalf's "racially based comments." *See id. generally* (noting the presence of the swastika tattoo four different times). It is a fair inference that one such comment, as it was specifically cited in the Court's

6

ruling, was "That's what I'm about" in conjunction with the swastika tattoo: the supremacy of the Aryan race, as it were.

Here, like in *Metcalf*, there is evidence that, in addition to adopting Nazi symbology, the defendant used racial slurs specific to the ethnicities he targeted. Here, like in *Metcalf*, the United States is not relying upon Nazi symbology alone, to prove race-based animus. Here, like in *Metcalf*, the Nazi symbology is probative of the defendant's intent in targeting the victims he targeted, as it is representative of the defendant's anti-Black and anti-Hispanic bias. *See also United States v. Armstrong*, 620 F.3d 1172, 1178 n.4 (9th Cir. 2010) (affirming obstruction of justice sentencing enhancement based on defendant's false testimony that his assault of a Black victim was not motivated by racial animus despite evidence that he had "tattoos of swastikas and Nazi 'SS' lightening [sic] bolts").

Along these lines, in *United States v. Allen*, cited in the United States' Rule 404(b) notice, the Ninth Circuit affirmed the conviction of multiple defendants for Section 245 crimes targeting Black and Hispanic individuals and affirmed the introduction of these defendants' adoption of Nazi symbology. *See* 341 F.3d 870 (9th Cir. 2003). In the recitation of facts, the Court highlighted the evidence that the defendants "believed it was their duty to finish what Hitler started – the killing of millions of *racial minorities* and

7

Jews[.]" *See id.* at 874 (emphasis added). Here, Hudak is charged with targeting two members of different racial minorities, based on their respective race and/or national origin.

And in affirming the introduction (over defendants' objections) of "color photographs of their tattoos (e.g., swastikas and other symbols of white supremacy), Nazi-related literature, group photographs including some of the defendants (e.g., in 'Heil Hitler' poses and standing before a large swastika that they later set on fire)," the *Allen* Court found that the "evidence was not unfairly [prejudicial] and properly was admitted to prove racial animus." *See id.* at 885-86. Notably, the Court found that this evidence was *not* cumulative and unfairly prejudicial despite the defendants' "admissions that they were racist and skinheads." *See id.* at 888. Hudak has made no such admissions in this case, which further underscores the probative value of this evidence.

Unless and until Hudak admits that he targeted J.S. and J.D. because of their perceived race and/or nationality, the United States is entitled to present proof of that element that comports with the Federal Rules of Evidence. This evidence is relevant; and the possibility that there may be an alternative inference for it goes to the weight and not the admissibility of the evidence. *See, e.g., United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1568 (10th Cir. 1993) ("Conflicting inferences" do "not detract from the probative value of the

8

evidence itself."). *See also, e.g.*, *United States v. Rodriguez*, 192 F.3d 946, 950 (10th Cir. 1999). And there is no *unfair* prejudice associated with this evidence because the United States does not intend to argue to the jury that these items mean Hudak is anti-Semitic.

As set forth in the United States's 404(b) notice and this filing, evidence that Hudak possessed and wore Nazi symbols is relevant, and highly probative of his motive and intent in targeting J.S. based on perceived race, and J.D. based on perceived race/nationality. To the extent that this symbology encompasses race-based animus that extends beyond Black and Hispanic victims does not undercut its probative value; Hudak adopted these symbols, with all of their connotations, when he obtained those Nazi flags and that swastika patch, when he wore that Iron Cross ring out into the world, and when he called J.S. a "piece of shit nigger" and J.D. a "fucking Mexican," after attacking them. He cannot now cry prejudice and ask this Court to protect him from the consequences of his own conduct and shield the jury from his racist views.

All evidence in a criminal case is inherently prejudicial; Rule 403 only comes into play when it is *unfairly* so. Federal courts weighing these same issues have not found that such prejudice is unfair, or that it substantially outweighs the probative evidentiary value, nor should they have, when the

9

burden lies with the United States to prove a defendant's selection of his victims beyond a reasonable doubt. The evidence should be admitted.

III. CONCLUSION

For all of the reasons set forth below, the United States respectfully requests that the Court admit Hudak's Nazi-related items into evidence.

This the 5th day of January, 2024.

Respectfully submitted,

SANDRA J. HAIRSTON
United States Attorney

/S/ JOANNA G. MCFADDEN
Assistant United States Attorney
Deputy Chief, Criminal Division
NYSB No.: 4500948
NCSB No.: 60561


/S/ ASHLEY E. WAID
Assistant United States Attorney
NCSB No.: 52441

United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street
Greensboro, NC 27401
Phone: 336/333-5351


KRISTEN M. CLARKE
Assistant Attorney General

/S/ DANIEL E. GRUNERT
Trial Attorney
Civil Rights Division
Department of Justice
DC No.: 1721133

11

CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Eugene Lester, Esq.

>Respectfully submitted,
>
>SANDRA J. HAIRSTON
>UNITED STATES ATTORNEY
>
>/S/ JOANNA G. MCFADDEN
>Assistant United States Attorney
>Deputy Chief, Criminal Division
>NYSB No.: 4500948
>NCSB No.: 60561
>United States Attorney's Office
>Middle District of North Carolina
>101 S. Edgeworth St., 4th Floor
>Greensboro, NC  27401
>Phone:  336/333-5351

12

Case 1:23-cr-00231-WO   Document 56   Filed 01/05/24   Page 12 of 12